Jonathan Stoler
Eric Raphan
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza, 24th Floor
New York, New York 10112
Telephone:  (212) 653-8700
Facsimile:  (212) 653-8701

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                                                        :
**RICHARD ALDERMAN, FRANCISCO AZOFEIFA,**  :   Index No.  09 CV 2418 (TPG)
**ROBERT BRINKMAN, GUSTAVO BRIONES,**         :
**MARIO BRITO, SAU LAM CHAN, JOHN**           :
**CIMABRANO, ANASTASIOS**                      :
**CONSTANTINOPOULOS, CARMEN DE BARTOLO,** :
**CLAUDIO DIAS, LUIS HERNAN DIAZ,**           :
**LEONARDO ENAMORADO, HARRIS**                :
**EROTOKRITOU, FRANCISCO FAJARDO,**           :
**FLORES, ROMEO FLORES, EBERHARD**            :
**GENZEMANN, CLEBER RAUL GUAMAN, JOSE**       :
**GUTIERREZ, ANTONIO LACERRA, LEON**          :
**LAHUEC, MICHAEL LEVINE, MICHAEL**           :
**MAKROGIANNIS, GUILLERMO MUNOZ,**            :
**GANDOLFO NAPOLI, JORGE NUNEZ, THOMAS**      :
**RAKOSI, MIGUEL RODRIGUEZ, SWAPAN**          :
**ROZARIO, JOSE PENA, PAUL SCHIEVE,**         :
**MICHAEL SLATER, JORGE WASHINGTON**          :
**VELEZ, JOHN WARD and MARIO ZAMORA, on**     :
behalf of themselves and others similarly situated,  :
                                                                        :
                    **Plaintiffs,**                                     :
                                                                        :
            **v.**                                                      :
                                                                        :
**21 CLUB INC. and ORIENT-EXPRESS HOTELS,**   :
**INC. d/b/a 21 CLUB,**                        :
                                                                        :
                    **Defendants.**                                     :
                                                                        :
------------------------------------------------------------------------x


**DEFENDANTS' MEMORANDUM OF**
**LAW IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...................................................................................ii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS......................................................................................3

     A.    Procedural History.................................................................................3

            1.     Plaintiffs Commence The Instant Action ....................................3

            2.     This Court Dismisses The Amended Complaint .........................3

            3.     Plaintiffs File A Second Amended Complaint ...........................4

     B.    The Collective Bargaining Agreement ..................................................5

     C.    '21' Club's And The Union's History Grieving And Arbitrating
           Wage And Hour Disputes, Including The Proper Allocation Of Tips ...................7

     D.    Plaintiffs' Union Filed Another Class Action Grievance Even After
           Plaintiffs Commenced The Instant Action .............................................9

ARGUMENT.........................................................................................................10

I.     STANDARD FOR MOTION TO DISMISS PURSUANT TO
       FED. R. CIV. P. 12(b)(6)...............................................................................10

II.    PLAINTIFFS HAVE FAILED TO ALLEGE SUFFICIENT FACTS THAT
       WOULD PERMIT THEM TO RECOVER UNDER THE NYLL OR FLSA.................11

III.   PLAINTIFFS' NYLL CLAIM IS PREEMPTED BY § 301 OF THE LMRA
       AND MUST BE DISMISSED .........................................................................12

     A.    Plaintiffs' NYLL Claim Is Preempted By The LMRA .........................12

     B.    Plaintiffs' NYLL Claim Is Barred Because Plaintiffs Failed To
           Exhaust Their Grievance And Arbitral Remedies Under The CBA ....................18

IV.   PLAINTIFFS' FLSA CLAIM IS SUBJECT TO ARBITRATION .................19

CONCLUSION .....................................................................................................25

## TABLE OF AUTHORITIES

**Case**                                                                                                      **Page**

14 Penn Plaza LLC v. Pyett,
    129 S. Ct. 1456, 173 L. Ed. 2d 398, 2009 U.S. LEXIS 2497 (2009) ...................................... 19

Allis-Chalmers Corp. v. Lueck,
    471 U.S. 202 (1985) ................................................................................................... 12-13

Bester v. Chicago Transit Auth.,
    No. 86 C 1067, 1991 U.S. Dist. LEXIS 16827 (N.D. Ill. Nov. 15, 1991) ........................ 20, 23

Cortec Industries, Inc. v. Sum Holding L.P.,
    949 F.2d 42 (2d Cir. 1991) ........................................................................................... 10, 11

De Jesus v. Sears, Roebuck & Co.,
    87 F.3d 65 (2d Cir. 1996) ................................................................................................... 10

Donahue v. Susquehanna Collieries Co.,
    138 F.2d 3 (3d Cir. 1943) .............................................................................................. 20, 23

Dougherty v. AT & T Co.,
    902 F.2d 201 (2d Cir. 1990) ............................................................................................... 18

Ellis v. HarperCollins Publishers, Inc.,
    No. 99 CV 12123, 2000 U.S. Dist. LEXIS 8598 (S.D.N.Y. June 21, 2000) ........................ 14

Freundt v. Allied Tube & Conduit Corp.,
    No. 06 C 2210, 2007 U.S. Dist. LEXIS 87852 (N.D. Ill. Nov. 29, 2007) ........................ 20, 23

Hayden v. County of Nassau,
    180 F.3d 42 (2d Cir. 1999) ................................................................................................. 11

Heredia v. Doe,
    473 F. Supp. 2d 462 (S.D.N.Y. 2007) ............................................................................... 10

Heyer v. Morris Okun, Inc.,
    No. 03 Civ. 2218 (NRB), 2003 U.S. Dist. LEXIS 14495 (S.D.N.Y. Aug. 20, 2003) ............ 14

In re Corning Securities Litigation,
    01-CV-6580 (CJS), 2004 U.S. Dist. LEXIS 8741 (W.D.N.Y. Apr. 12, 2004) ...................... 11

Leahy v. City of Chicago,
    96 F.3d 228 (7th Cir. 1996) ...................................................................... 19-21, 22-23, 24

Levy v. Verizon,
    498 F. Supp. 2d 586 (E.D.N.Y. 2007) ..................................................................14, 18, 19,

Medrano v. Excel Corp.,
    985 F.2d 230 (5th Cir. 1993) ............................................................................................. 18

Nghiem v. U.S. Dept. of Veteran Affairs,
    451 F. Supp. 2d 599 (S.D.N.Y. 2006) .................................................................. 10

O'Rourke v. Carmen M. Parisco, Inc.,
    501 F. Supp. 2d 445 (W.D.N.Y. 2007) ............................................................ 14, 17

Salamea v. Macy's East, Inc.,
    426 F. Supp. 2d 149 (S.D.N.Y. 2006) ........................................................ 10-11, 14

Townsend v. BC Natural Chicken LLC,
    No. 06-4317, 2007 U.S. Dist. LEXIS 8282 (E.D. Pa. Feb. 2, 2007) ...................... 20

Vadino v. A. Valey Eng'rs,
    903 F.2d 253 (3d Cir. 1990) ........................................................... 20, 21, 22, 23

Vera v. Saks & Co.,
    335 F.3d 109 (2d Cir. 2003) ........................................................... 13, 14, 17-18

Wagner v. Edisonlearning, Inc.,
    09 Civ. 831 (SAS), 2009 U.S. Dist. LEXIS 32965 (S.D.N.Y. Apr. 17, 2009) ........................ 12

## Statutes

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1, 3, 7

LMRA § 301 ................................................................................................... *passim*

New York Labor Law § 196-d ............................................................................... 3, 4

Pursuant to Fed. R. Civ. P. 12 (b)(6), Defendants, '21' Club, Inc. d/b/a '21' Club ("'21' Club")[1] and Orient Express Hotels Inc. ("Orient Express Hotels")[2] ('21' Club and Orient Express Hotels are collectively referred to herein as "Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss ("Motion") Plaintiffs' Second Amended Complaint.[3]  In support of this Memorandum, Defendants rely upon the Declaration of Jonathan Stoler, Esq., dated November 12, 2009 ("Stoler Decl."), and the Declaration of Bryan McGuire, dated November 13, 2009 ("McGuire Decl."), both of which are submitted herewith.

## PRELIMINARY STATEMENT

Like Plaintiffs' prior Amended Complaint, which this Court dismissed, Plaintiffs' Second Amended Complaint purports to allege violations of the New York Labor Law ("NYLL") and the Fair Labor Standards Act ("FLSA") for unpaid tips and overtime wages.  However, despite this Court's dismissal of Plaintiffs' Amended Complaint and explicit order that Plaintiffs file a Second Amended Complaint that sets forth the precise nature of their claims, Plaintiffs have failed to do so.  In fact, Plaintiffs have ignored this Court's instructions and merely added a few meaningless and specious allegations in a half-hearted attempt to save their claims from dismissal once again.

Moreover, even if Plaintiffs' limited new allegations are sufficient to save their claims from dismissal, Plaintiffs' claims still must be dismissed because they have completely ignored the collective bargaining agreement currently in place between their labor union and '21' Club,

---

[1]    '21' Club, Inc. d/b/a '21' Club is incorrectly denominated in the caption as "21 Club Inc."

[2]    Orient Express Hotels is incorrectly denominated in the caption as "Orient-Express Hotels, Inc. d/b/a 21 Club." Further, this entity is not the employer of Plaintiffs or any of the individuals on whose behalf Plaintiffs purport to bring this action.  Therefore, Orient Express Hotels is not a proper party to this litigation.

[3]    All of the plaintiffs set forth in the caption as well as any other individuals who may have opted-in to this case since plaintiffs commenced the instant action are collectively referred to herein as "Plaintiffs."

,which requires them to resolve such claims through the agreement's grievance and arbitration procedures.

Plaintiffs purport to bring their claims on behalf of themselves and all non-exempt persons employed at '21' Club who work private banquets as barbacks, bartenders, captains, waiters, bussers and/or sommeliers. Plaintiffs' NYLL claim is based upon Plaintiffs' allegation that '21' Club improperly retained a portion of Plaintiffs' tips. Plaintiffs' FLSA claim is based upon Plaintiffs' allegation that they were not paid at the appropriate overtime rate for hours worked in excess of forty hours per workweek.

Significantly, both of these issues are specifically addressed in the parties' collective bargaining agreement. By filing this Motion, Defendants are not asking this Court to decide whether Defendants improperly retained a portion of Plaintiffs' tips or whether Plaintiffs were paid at the proper overtime rate. Indeed, pursuant to the parties' collective bargaining agreement and historical practice, such decision should be made by an arbitrator who must interpret and analyze the collective bargaining agreement in order to determine the merits of Plaintiffs' claims. Instead, Defendants are asking this Court to determine the proper forum in which these issues should be decided.

Accordingly, Defendants respectfully request that this Court dismiss Plaintiffs' NYLL claim because such claim is preempted by § 301 of the Labor Management Relations Act ("LMRA") and should be resolved under the grievance and arbitration procedures set forth in the collective bargaining agreement between Plaintiffs' labor union and '21' Club. In addition, Defendants respectfully request that this Court dismiss Plaintiffs' FLSA claim because such claim is also subject to the grievance and arbitration procedures set forth in the collective bargaining agreement.

## STATEMENT OF FACTS

**A.**   **Procedural History**

      **1.**   **Plaintiffs Commence The Instant Action**

On or about March 17, 2009, Plaintiffs filed their initial complaint in this matter. (Stoler

Decl. ¶3, Ex. A). On or about April 2, 2009, Plaintiffs filed the amended complaint ("Amended

Complaint" or "Am. Compl."). (Stoler Decl. ¶4, Ex. B). Plaintiffs attempted to set forth two

claims in the Amended Complaint. (Am. Compl. at ¶¶26-34).

To begin, Plaintiffs attempted to allege that '21' Club improperly retained a portion of

Plaintiffs' tips in violation of NYLL § 196-d (the "NYLL Claim"). (Id. at ¶¶31-34). Plaintiffs

purported to bring the NYLL Claim as a class action on behalf of themselves and all non-exempt

persons employed by '21' Club at private banquets as a barback, bartender, captain, waiter,

busser and/or sommelier.   (Id. at ¶11).

Plaintiffs also attempted to allege that '21' Club failed to pay them at the proper overtime

hourly rate for hours worked in excess of forty hours per workweek in violation of the FLSA (the

"FLSA Claim"). (Id. at ¶¶26-30). Plaintiffs purported to bring the FLSA Claim as a collective

action on behalf of themselves and all non-exempt persons employed by '21' Club at private

banquets as a barback, bartender, captain, waiter, busser and/or sommelier.   (Id. at ¶8).

      **2.**   **This Court Dismisses The Amended Complaint**

On or about May 13, 2009, '21' Club filed its initial motion to dismiss the Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(6) ("Initial Motion"). Specifically, '21' Club argued

in the Initial Motion that Plaintiffs' NYLL Claim was preempted by § 301 of the LMRA and that

Plaintiffs' FLSA claim is subject to arbitration.

-3-

On August 11, 2009, this Court issued an opinion wherein it dismissed the Amended Complaint with leave to replead ("Opinion"). (Stoler Decl. ¶5, Ex. C). Specifically, this Court stated in the Opinion:

> The [Amended Complaint] is worded as if it were taken from a form book. It is entirely lacking in any statement of what the precise dispute is about. Therefore it is impossible to determine whether the specific defenses asserted are applicable.

(Id.). The Opinion further provided Plaintiffs with leave "to replead with the required specific allegations of wrongdoing" and to file a second amended complaint on or before October 15, 2009. (Id.).

### 3.    Plaintiffs File A Second Amended Complaint

On October 14, 2009, Plaintiffs filed a second amended complaint ("Second Amended Complaint" or "Sec. Am. Compl."). (Stoler Decl. ¶6, Ex. D). Despite this Court's clear instructions to Plaintiffs that they set forth the basis of their claims with specificity, Plaintiffs have added just a few meaningless allegations in a baseless attempt to save Plaintiffs' NYLL Claim and FLSA Claim. (Stoler Decl. ¶7, Ex. E).

With respect to the NYLL Claim, Plaintiffs simply mirror the same claim previously dismissed by this Court and again allege that '21' Club improperly retained a portion of Plaintiffs' tips in violation of NYLL § 196-d. (Sec. Am. Compl. at ¶¶32-36). With respect to the FLSA Claim, Plaintiffs again allege that they were not paid at the proper overtime hourly rate for hours worked in excess of forty hours per workweek in violation of the FLSA. While Plaintiffs also seem to allege that such claim is based, at least in part, on the allegation that Defendants failed to factor in "mandatory gratuities paid by the host of the events at which Plaintiffs worked" when calculating Plaintiffs' overtime rate (Id. at ¶24), Plaintiffs still fail to set forth sufficient facts to understand the precise nature of their claims.

**B.    The Collective Bargaining Agreement**

Plaintiffs have been employed by '21' Club in various service positions within the past three years and work private banquets. (Id. at ¶¶7, 8, 11; McGuire Decl. ¶3). The terms and conditions of Plaintiffs' employment at '21' Club are governed by a collective bargaining agreement ("CBA") between '21' Club and HERE UNITE, Local 100 of New York and Vicinity of the Hotel Employees & Restaurant Employees International Union ("Union"), which is in effect from November 1, 2006 to October 31, 2011. (McGuire Decl. ¶5, Ex. A).[4]

As set forth in the CBA, "the parties desire, by collective bargaining, to continue and maintain harmonious relations." (CBA at p. 1).[5] In addition, through the CBA, '21' Club recognizes the Union as "the sole and exclusive bargaining representative of all food service employees . . . ." (Id. at Art. 1). The CBA sets forth the hourly rates that all employees covered by the CBA, including Plaintiffs, are to be paid. The employees' hourly rate varies depending on the job title each employee is assigned on a particular day. (Id. at Art. 6, Sched. A). Thus, for example, if an employee works as a Bartender on a particular day he is paid at one rate. (Id.). If he works as a Waiter on another day, he is paid at a different rate. (Id.). If an employee is requested or scheduled to report to work he must be paid for a full day even if he does not work a full day. (CBA at Art. 7, ¶f). Further, if an employee is required to work on one of the holidays set forth in the CBA, then that employee shall be paid at a rate of "double time." (Id. at Art. 12,

---

[4]   The terms and conditions of employment for '21' Club's food service employees, including private banquet employees, have long been governed by collective bargaining agreements. (McGuire Decl. ¶4). The most recent CBA is dated March 17, 1995 and was initially effective from October 1, 1994 through October 31, 1998. (McGuire Decl. ¶5, Ex. A). Thereafter, the Union and '21' Club entered into several memoranda of agreement and addendums thereto which extended the effective dates of the CBA. (McGuire Decl. ¶¶6-11, Exs. B-G). As a result, the CBA, as amended by the memoranda of agreement and addendums, remains in effect until October 31, 2011. (Id.).

[5]   All citations to "CBA" are to the document attached as Exhibit A to the McGuire Declaration. To the extent that any relevant portion of the CBA was later amended by a memoranda of agreement or addendum, such document is cited to herein.

¶b).  New hires may be paid at a rate of eighty percent (80%) of the rate for his/her job

classification for a period of up to one year.  (McGuire Decl. ¶6, Ex. B at ¶3).

      The CBA sets forth a regular workweek for all employees consisting of five (5) work

days at eight (8) hours per day and forty (40) hours per week.  (CBA at Art. 7, ¶¶a, b).  The CBA

provides that if an employee is required to work a sixth day in a workweek and, thus, more than

forty (40) hours in a workweek, then he is to be paid at a rate of time and a half his regular rate

for all overtime hours worked.  (Id. at Art. 7, ¶e).

      The CBA also contains instructions regarding the allocation of tips for certain events,

including private banquets.  Specifically, the CBA states:

> For all pre-arranged affairs, promotional parties or similar
> functions ("parties") where no collection of tips or gratuities by
> individual employees is permitted, ['21' Club] agrees that the
> banquet service staff shall be guaranteed gratuities in the amount
> of eighteen (18%) percent of the total bill(s) for the party, which
> bill(s) shall include both food and liquor as per Arbitrator George
> Sabatella's Awards, attached as Schedule D.
>
> Within a reasonable time after the party, a shop steward or
> assistant shop steward shall be permitted to examine any check(s)
> or bill(s) for any such party upon request.

(Id. at Art. 26).

      The CBA, as amended by the Memorandum of Agreement between the Union and '21'

Club, dated November 25, 2003 ("November 25, 2003 MOA"), also includes grievance and

arbitration procedures for any complaints, grievances or disputes concerning the application,

interpretation or construction of the CBA, or any of its terms, conditions or provisions.  (Id. at

Arts. 36, 37; McGuire Decl. ¶8, Ex. D at pgs. 3-5).  As the CBA states, the purpose of the

grievance and arbitration procedures is: "(1) to provide the fullest opportunity for discussion and

resolution of any grievance arising out of the interpretation or application of any of the

provisions of [the CBA]; and (2) to establish definite guidelines and procedures for the

processing and settlement of grievances as defined herein." (Id. at Art. 36, ¶a; McGuire Decl.

¶8, Ex. D at pg. 3).

Pursuant to the CBA's grievance procedure, as amended by the November 25, 2003

MOA, any dispute concerning the application, interpretation or construction of the CBA, or any

of its terms, conditions or provisions must first be discussed by a Union representative and '21'

Club within fifteen (15) days of the event giving rise to the dispute. (McGuire Decl. Ex. D at pg.

4). The grieved party is then required to provide a written answer to the grievance within five

(5) days of the grievance's presentation. (Id.). If the Union and '21' Club are unable to resolve

the dispute and the aggrieved party wishes to further pursue the issue, then such party is to

submit the issue to final binding arbitration. (Id.). The issue must be submitted to arbitration

within thirty (30) days of the grieved party's written response. (Id.). Article 37 of the CBA, as

amended by the November 25, 2003 MOA, governs the arbitration process. (Id. at Art. 37;

McGuire Decl. ¶8, Ex. D at pgs. 4-5).

C.    '21' Club's And The Union's History Of Grieving And Arbitrating
      Wage And Hour Disputes, Including The Proper Allocation Of Tips

As set forth above, '21' Club and the Union have been parties to a CBA with similar

provisions for over 20 years. (McGuire Decl. ¶4). During that time, the Union and '21' Club

have had a long history of arbitrating numerous wage and hour issues, including issues related to

the allocation of tips.

In fact, in 1995, the Union filed a grievance against '21' Club regarding the exact issue

that now forms the basis of Plaintiffs' NYLL Claim. Specifically, on July 12, 1995, the Union

filed a "Class Action Grievance Filed On Behalf Of The Banquet Department" (the "1995 Class

Action Grievance"). (McGuire Decl. ¶12, Ex. H). At issue in the Class Action Grievance was

-7-

the Union's allegation that '21' Club had improperly withheld the private banquet workers' tips. (Id.). Significantly, at least fourteen (14) of the individuals who have joined the instant case as plaintiffs signed the Class Action Grievance. (Id.)

Other examples of the Union and '21' Club submitting wage and hour disputes to the CBA's grievance and arbitration provisions include:

- In 1989, the Union and '21' Club participated in an arbitration regarding the distribution of tips among employees who worked certain pre-arranged functions. (CBA at Sched. D).

- In 1993, the Union and '21' Club participated in an arbitration regarding whether Captains are required to share in the responsibility for tipping Busboys. (Id.).

- In 1996, the Union filed a grievance against '21' Club regarding how '21' Club calculates and pays the gratuities of the banquet staff workers. (McGuire Decl. ¶¶13-14, Exs. I-J). The grievance was filed by the Union's Shop Steward, Michael Slater. (McGuire Decl. ¶13, Ex. I). Mr. Slater is also a named plaintiff in the instant case. As a result of such grievance, an impartial arbitrator issued a consent award (the "Consent Award") wherein he retained jurisdiction over the implementation of such Consent Award. (McGuire Decl. ¶14, Ex. J).

- By letter, dated June 22, 2004, the Union attempted to grieve a claim that '21' Club "has not been paying employees holidays and overtime correctly." (McGuire Decl. ¶15, Ex. K).

- On March 30, 2009, the Union alleged that '21' Club's "policy on room fees for catered events unfairly affect[ed] income for tipped employees." (McGuire Decl. ¶16, Ex. L).

Further, prior to commencing the instant action, Plaintiffs, through their Union, attempted to grieve the very issue that is the basis of Plaintiffs' NYLL Claim. On or about December 29, 2008, the Union availed itself of the CBA's grievance mechanism by submitting a letter to '21' Club alleging that '21' Club had improperly retained a portion of the private banquet employees' tips. (McGuire Decl. ¶17, Ex. M). By letter, dated January 26, 2009, '21' Club responded to the Union's claim. (McGuire Decl. ¶18, Ex. N). Rather than proceeding to arbitration, as required by the CBA, Plaintiffs commenced the instant action.

-8-

**D.     Plaintiffs' Union Filed Another Class Action**
        **Grievance Even After Plaintiffs Commenced The Instant Action**

On or about July 21, 2009 – *four months after Plaintiffs commenced the instant action* –

Plaintiffs' Union filed yet another grievance alleging that '21' Club was improperly withholding

gratuities. (McGuire Decl. ¶19, Ex. O). Indeed, Plaintiffs' Union again styled such grievance as

a "Class Action" on behalf of the entire bargaining unit, including Plaintiffs ("2009 Class Action

Grievance"). (Id.). The 2009 Class Action Grievance is identical to Plaintiffs' claims in the

instant matter. (Id.). Namely, the Union alleged in the 2009 Class Action Grievance that '21'

Club failed "to pay gratuities based on total bills for all pre-arranged affairs, promotional parties,

or similar functions where no collection of tips or gratuities by individual employees is

permitted" in violation of Article 26 of the CBA. (Id.).

Because the Initial Motion had been fully briefed at the time that the Union filed the 2009

Class Action Grievance, Defendants brought the 2009 Class Action Grievance to this Court's

attention, by letter, dated July 24, 2009. (Stoler Decl. ¶8, Ex. F). Pursuant to such letter,

Defendants respectfully requested that this Court consider the 2009 Class Action Grievance in

connection with Defendants' Initial Motion. (Id.). On or about August 3, 2009, Plaintiffs'

Union sought to amend the 2009 Class Action Grievance by filing an amended grievance

("Amended 2009 Class Action Grievance"). (McGuire Decl. ¶20, Ex. P). Plaintiffs' Union

alleges in the Amended 2009 Class Action Grievance that '21' Club failed to properly calculate

the employees' "mandatory gratuity" for certain parties. (Id.). Specifically, Plaintiffs' Union

asserts that '21' Club failed to include the "room rental fees in the party's cost for purposes of

determining the gratuity" for employees who worked such parties in violation of Article 26 of

the CBA. (Id.).

## **ARGUMENT**

I.   **STANDARD FOR MOTION TO**
     **DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

The standard to be applied in consideration of a motion to dismiss pursuant to Fed. R.

Civ. P. 12(b)(6) is well established in the Second Circuit.  The Court shall treat all factual

allegations in the Second Amended Complaint as true.  See De Jesus v. Sears, Roebuck & Co.,

87 F.3d 65, 70 (2d Cir. 1996).  The Court, however, is not required to give credit to legal

conclusions improperly alleged in the Second Amended Complaint.  See De Jesus, 87 F.3d at 70.

The Court's function when considering a motion to dismiss is not to weigh the evidence that may

be presented at trial.  Rather, the Court's function is merely to determine whether the Second

Amended Complaint is legally sufficient.  See Heredia v. Doe, 473 F. Supp. 2d 462, 464

(S.D.N.Y. 2007) (citations omitted); Nghiem v. U.S. Dept. of Veteran Affairs, 451 F. Supp. 2d

599, 603 (S.D.N.Y. 2006) (citations omitted).

When deciding the instant Motion, the court may consider documents that are referenced

in the complaint, documents upon which the plaintiffs relied when bringing their claims or

matters of which judicial notice may be taken.  See Cortec Industries, Inc. v. Sum Holding L.P.,

949 F.2d 42, 47-48 (2d Cir. 1991) (declining to convert motion to dismiss into motion for

summary judgment even where documents outside of the pleadings were relied upon in support

of the motion to dismiss because the plaintiff had notice of documents relied upon by defendant

when drafting the complaint).  Moreover, the fact that neither Plaintiffs' status as Union

members nor the CBA itself were referenced in the Second Amended Complaint, does not

warrant converting the instant Motion to a motion for summary judgment.  In Salamea v. Macy's

East, Inc., 426 F. Supp. 2d 149, 152 (S.D.N.Y. 2006), the defendants moved to dismiss certain of

the plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) because they were preempted by § 301

of the LMRA. The plaintiff failed to reference her union status or the collective bargaining agreement in her complaint. However, the defendants submitted the collective bargaining agreement to the court through an affidavit in connection with their motion to dismiss. The court held that consideration of these issues was proper at the motion to dismiss stage because the plaintiff knew of these documents and information when she filed her complaint. Id. at 152, 155-156. The same principles should apply to the instant matter.[6]

Finally, the fact that Plaintiffs purport to bring the Second Amended Complaint as a putative collective action and/or class action does not save their claims from dismissal. Indeed, courts in the Second Circuit have dismissed deficient complaints (or portions of such complaints) even when the complaint is a proposed class action. See In re Corning Securities Litigation, 01-CV-6580 (CJS), 2004 U.S. Dist. LEXIS 8741 (W.D.N.Y. Apr. 12, 2004) (dismissing class action); Hayden v. County of Nassau, 180 F.3d 42 (2d Cir. 1999).

## II.   PLAINTIFFS HAVE FAILED TO ALLEGE FACTS THAT WOULD PERMIT THEM TO RECOVER UNDER THE NYLL OR FLSA

As set forth above, rather than rule on Defendants' Initial Motion, this Court dismissed the Amended Complaint and Ordered Plaintiffs to "replead with the required specific allegations of wrongdoing." (Stoler Decl. ¶5, Ex. C). In connection with such Order, this Court noted that the Amended Complaint was "worded as if it were taken from a form book [and] . . . entirely lacking in any statement of what the precise dispute is about." (Id.). Rather than heed the Court's explicit instructions to set forth the basis of their claims with specificity, Plaintiffs

---

[6]   If this Court decides that it is inappropriate to consider the instant Motion as a motion to dismiss, Defendants respectfully request that the Court convert the motion to one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Cortec, 949 F.2d at 47-48 (discussing court's authority to convert motion to dismiss to one for summary judgment). There are no genuine issues of material fact regarding the authenticity of the documents '21' Club has submitted in support of its Motion or Plaintiffs' union membership. Accordingly, the issues of law regarding whether Plaintiffs' NYLL Claim and FLSA Claim should be dismissed for the reasons set forth herein can be resolved at this stage of the litigation.

merely added a handful of meaningless allegations that fail to shed any additional light on the

basis of Plaintiffs' claims.  (Stoler Decl. ¶7, Ex. E).  Indeed, Plaintiffs' NYLL Claim is a mirror

image of the same claim previously dismissed by this Court.  Stated simply, Plaintiffs' Second

Amended Complaint fails to sufficiently amplify their claims with factual allegations and,

instead, sets forth nothing more than bald assertions and conclusions of law.  Accordingly,

Plaintiffs' Second Amended Complaint should be dismissed on this basis alone.  See Wagner v.

Edisonlearning, Inc., 09 Civ. 831 (SAS), 2009 U.S. Dist. LEXIS 32965, *3 (S.D.N.Y. Apr. 17,

2009) (dismissing claims because plaintiff failed to allege facts that would permit her to

recover).

## III.   PLAINTIFFS' NYLL CLAIM IS PREEMPTED BY § 301 OF THE LMRA AND MUST BE DISMISSED

Even assuming, *arguendo*, that the Second Amended Complaint meets the pleading

requirements set forth above, Plaintiffs' NYLL Claim should be dismissed because it is

preempted by § 301 of the LMRA.  Moreover, to the extent that Plaintiffs purport to bring the

NYLL Claim as a § 301 claim, such claim must be dismissed because Plaintiffs failed to exhaust

their grievance and arbitral remedies under the CBA.

### A.   Plaintiffs' NYLL Claim Is Preempted By The LMRA

Plaintiffs' NYLL Claim should be dismissed as preempted by § 301 of the LMRA

because the resolution of this claim would require the decision-maker to interpret the CBA.  It is

well settled that when the resolution of a state law claim requires the decision-maker to interpret

the terms of a collective bargaining agreement between the parties, such claim must be treated as

a claim under § 301 of the LMRA or is preempted by federal labor law.  See Allis-Chalmers

Corp. v. Lueck, 471 U.S. 202, 209 (1985).  Section 301 of the LMRA provides that:

> Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting

> commerce as defined in this chapter, or between any such labor
> organizations, may be brought in any district court of the United
> States having jurisdiction of the parties, without respect to the
> amount in controversy or without regard to citizenship of the
> parties.

29 U.S.C. § 185(a).  The Supreme Court has interpreted § 301 "as a congressional mandate to the

federal courts to fashion a body of federal common law to be used to address disputes arising out

of labor contracts." Lueck, 471 U.S. at 209.  Therefore, when a state claim alleges a violation of

a labor contract, the Supreme Court has held that the claim is preempted by § 301 and must be

resolved by reference to federal law.  See Vera v. Saks & Co., 335 F.3d 109, 114 (2d Cir. 2003)

(citing Lueck, 471 U.S. at 210).

Significantly, the Supreme Court has extended the preemptive effect of § 301 beyond

suits alleging contract violations.  See Vera, 335 F.3d at 114.  As the Supreme Court stated in

Lueck, "[q]uestions relating to what the parties to a labor agreement agreed and what legal

consequences were intended to flow from breaches of that agreement, must be resolved by

reference to uniform federal law, whether such questions arise in the context of a breach of

contract or in a suit alleging liability in tort." Lueck, 471 U.S. at 220; see also Vera, 335 F.3d at

114.  As a result, the Supreme Court has stated that "[w]hen resolution of a state-law claim is

substantially dependent upon an analysis of the terms of an agreement made between the parties

in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted

by federal labor-contract law." Lueck, 471 U.S. at 220; see also Vera, 335 F.3d at 114.  Stated

another way, a plaintiff cannot simply avoid preemption by couching his claim as a state law

claim. Lueck, 471 U.S. at 220.

Moreover, the preemption of state law claims by § 301 has not been limited to common

law causes of action.  Indeed, courts have routinely dismissed wage claims brought under the

NYLL as preempted where such claims substantially depend upon an interpretation of the terms

of a CBA. See Vera, 335 F.3d at 115 (holding that plaintiffs' claims for impermissible wage deductions pursuant to NYLL § 193 were preempted); Levy v. Verizon, 498 F. Supp. 2d 586, 597 (E.D.N.Y. 2007) (same); O'Rourke v. Carmen M. Parisco, Inc., 501 F. Supp. 2d 445, 450 (W.D.N.Y. 2007) (holding that plaintiffs' claims under NYLL § 190 were preempted); Salamea, 426 F. Supp. 2d at 155 (holding that employee's claim for unpaid wages under NYLL § 198 are preempted); Heyer v. Morris Okun, Inc., No. 03 Civ. 2218 (NRB), 2003 U.S. Dist. LEXIS 14495, *10 (S.D.N.Y. Aug. 20, 2003) (holding that plaintiffs' claims under NYLL § 198 (1-a) were preempted); Ellis v. HarperCollins Publishers, Inc., No. 99 CV 12123, 2000 U.S. Dist. LEXIS 8598, *5-6 (S.D.N.Y. June 21, 2000) (holding that plaintiffs' claims under NYLL § 191 were preempted).

Similar to the plethora of cases set forth above, there can be no dispute that the adjudication of Plaintiffs' NYLL Claim will depend upon the interpretation of the CBA. Plaintiffs' NYLL Claim is based upon their allegation that '21' Club violated NYLL § 196-d by improperly retaining a portion of the tips that Plaintiffs should have received for work they performed at private banquets. (Sec. Am. Compl. at ¶¶32-36). Article 26 of the CBA specifically addresses how tips for private banquets are to be allocated. Article 26 provides that "[f]or all pre-arranged affairs, promotional parties or similar functions ("parties") where no collection of tips or gratuities by individual employees is permitted, ['21' Club] agrees that the banquet service staff shall be guaranteed gratuities in the amount of eighteen (18%) percent of the total bill(s) for the party, which bill(s) shall include both food and liquor as per Arbitrator George Sabatella's Awards, attached as Schedule D." (CBA at Art. 26).

Therefore, in order to assess Plaintiffs' claim, one would have to interpret the CBA and Article 26 in particular. For example, one would have to interpret which events constitute

-14-

"parties" as set forth in the CBA because Article 26 would only apply to such "parties." In addition, one would have to interpret what the Union and '21' Club meant by "banquet service staff" and which positions are included in such term. As yet another example, one would have to, interpret what the Union and '21' Club meant by "total bill" and whether such term is to include ancillary charges such as room rental fees. Further, one would also have to interpret the arbitration decisions set forth in Schedule D of the CBA which are incorporated into the CBA by reference. (CBA at Art. 26). Thus, whether '21' Club improperly retained any portion of Plaintiffs' tips is necessarily subject to the interpretation of the CBA.

Significantly, Plaintiffs and their Union have already conceded on multiple occasions that any issues related to the allocation of tips require interpretation of the CBA and, thus, are subject to the CBA's grievance and arbitration provisions. Most recently, on July 21, 2009, Plaintiffs' Union filed the 2009 Class Action Grievance alleging that '21' Club was "improperly withholding gratuities." (McGuire Decl. ¶19, Ex. O). Plaintiffs' Union filed the grievance on behalf of the entire bargaining unit, including Plaintiffs, and styled the grievance as a "Class Action." (Id.). The fact that Plaintiffs, through their Union, filed the 2009 Class Action grievance *four (4) months after* they commenced the instant action constitutes a blatant admission by Plaintiffs that the NYLL Claim is subject to the CBA's grievance and arbitration provisions.

Defendants anticipate that Plaintiffs will argue in opposition to the instant Motion that the Amended 2009 Class Action Grievance attempts to clarify that the issues set forth in such grievance are distinct from the claims raised in the Second Amended Complaint. However, Plaintiffs' desperate effort to save their claims should be rejected by this Court. As an initial matter, Defendants note that Plaintiffs' Union only submitted the Amended 2009 Class Action

-15-

Grievance after Defendants put the Court and Plaintiffs on notice that the 2009 Class Action

Grievance constituted a clear admission by Plaintiffs that their claims in this case are subject to

the CBA's grievance and arbitration provision.  Further, regardless of the minor differences

between the 2009 Class Action Grievance and the Amended 2009 Class Action Grievance, both

grievances make it clear that the calculation of the gratuities owed to employees who work at

private banquets at '21' Club is governed by Article 26 of the CBA and, thus, subject to the

CBA's grievance and arbitration procedures.  (McGuire Decl. ¶¶19-20, Exs. O, P).  Accordingly,

the 2009 Class Action Grievance leaves no doubt that the parties understood and intended that

the instant dispute must be arbitrated.

      Moreover, as set forth above, in addition to the 2009 Class Action Grievance, Plaintiffs

and their Union have participated in the CBA's grievance/arbitration process regarding the

allocation of tips and other wage and hour issues on at least seven other occasions over the last

20 years.  Indeed, the 1995 Class Action Grievance that the Union filed (and that at least 14 of

the individual Plaintiffs in this case signed) was based on the exact issue that now forms the

basis of Plaintiffs' NYLL Claim; namely, whether '21' Club had improperly withheld the

banquet workers' tips.  (McGuire Decl. ¶12, Ex. H).  Other examples of the Union's submission

of wage and hour disputes to the CBA's grievance and arbitration procedures include:

- In 1989, the Union and '21' Club participated in an arbitration regarding the distribution of tips among employees who worked certain pre-arranged functions;

- In 1993, the Union and '21' Club participated in an arbitration regarding whether Captains are required to share in the responsibility for tipping Busboys;

- In 1996, the Union filed a grievance against '21' Club regarding how '21' Club calculates and pays the gratuities of the banquet staff workers.  The grievance was filed by the Union's Shop Steward, Michael Slater.  Mr. Slater is also a named plaintiff in the instant case.  As a result of such grievance, an impartial arbitrator issued the Consent Award wherein he retained jurisdiction over the implementation of such award;

- By letter, dated June 22, 2004, the Union attempted to grieve a claim that '21' Club "has not been paying employees holidays and overtime correctly;"

- By letter, dated December 29, 2008, the Union again attempted to grieve the very claim that forms the basis for the NYLL Claim when it alleged that '21' Club had improperly retained a portion of the private banquet workers' tips. By letter, dated January 26, 2009, '21' Club responded to the Union's claim; and

- On March 30, 2009, the Union alleged that '21' Club's "policy on room fees for catered events unfairly affect[ed] income for tipped employees."

(CBA at Sched. D; McGuire Decl. ¶¶13-18, Exs. I-N). The fact that the Union and '21' Club have participated in such prior grievances and arbitrations indisputably establishes a past practice of resolving claims of this type pursuant to the CBA. Indeed, the 1996 Consent Award requires Plaintiffs to bring any dispute relating to the calculation and payment of "the gratuities of the banquet service staff" to the same impartial arbitrator who has retained jurisdiction of these issues. (McGuire Decl. ¶14, Ex. J). Accordingly, Plaintiffs' NYLL Claim should be preempted and subject to the CBA's grievance and arbitration procedures. See O'Rourke, 501 F. Supp. 2d at 450 (stating that where plaintiff's claims were previously subjected to a grievance that was processed to conclusion under the collective bargaining agreement, then it is evident that such claims are "inextricably intertwined" with the CBA and, thus, are preempted).

Finally, to the extent that Plaintiffs' NYLL Claim challenges the legality of Article 26, such fact does not save the NYLL Claim from preemption. As the Second Circuit held in Vera, a plaintiff's claim that a specific provision in a collective bargaining agreement violates the NYLL will, in and of itself, require substantial interpretation of the CBA and, therefore, warrant preemption of such claim. Id. at 116. In Vera, the plaintiff alleged that a charge-back policy set forth in the collective bargaining agreement between the plaintiff's union and his employer constituted an unlawful wage deduction in violation of NYLL § 193. Id. at 113. In asserting his claim, the plaintiff avoided seeking any relief under the collective bargaining agreement and

-17-

claimed that he was only asserting independent statutory claims under the NYLL. Id. at 115. The Second Circuit held that the plaintiff's claim was preempted and stated "[i]n our view, plaintiff's challenge to the lawfulness of a term of the CBA will require substantial interpretation of the CBA." Id. at 116; see also Levy, 498 F. Supp. 2d at 597-598; Medrano v. Excel Corp., 985 F.2d 230, 234 (5th Cir. 1993) (holding that where plaintiff alleged that a provision of the collective bargaining agreement violated state law, the "claim without a doubt is substantially dependent upon the meaning of a term of the CBA and its applicability in this case" and "clearly requires construing the CBA."). In light of this precedent, Plaintiffs cannot avoid preemption merely by alleging that Article 26 of the CBA violates the NYLL.

**B.      Plaintiffs' NYLL Claim Is Barred Because Plaintiffs Failed To
Exhaust Their Grievance And Arbitral Remedies Under The CBA**

To the extent that Plaintiffs try to couch their NYLL Claim as a § 301 claim, such claim is barred because Plaintiffs failed to exhaust their grievance and arbitral remedies under the CBA. Before a plaintiff can bring an action under § 301, "the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement." Levy, 498 F. Supp. 2d at 598 (quoting Dougherty v. AT & T Co., 902 F.2d 201, 203 (2d Cir. 1990)).

Pursuant to the CBA in the instant matter, exhaustion requires Plaintiffs to file a grievance under the CBA's grievance procedure and, if dissatisfied with '21' Club's response, then Plaintiffs must proceed to arbitration. Indeed, Article 36 of the CBA defines a grievance to include "[a]ll disputes concerning the application, interpretation or construction of this Agreement or any of its terms, conditions or provision[s] . . ." (CBA at Art. 36, ¶b; McGuire Decl. ¶8, Ex. D at pgs. 3-5). As set forth above, Articles 36 and 37 of the CBA, as amended by the November 25, 2003 MOA, contain specific requirements and deadlines that the aggrieved party must meet in order to complete the grievance process and submit any remaining disputes to

arbitration. Here, Plaintiffs do not allege, nor can they, that they properly followed the CBA's grievance and arbitration provisions. Such fact is fatal to Plaintiffs' attempt to try to assert their NYLL Claim under § 301 of the LMRA. See Levy, 498 F. Supp. at 598.

Based upon the above, Plaintiffs' NYLL Claim is preempted by § 301 of the LMRA and, therefore, should be dismissed.

## IV.    PLAINTIFFS' FLSA CLAIM IS SUBJECT TO ARBITRATION

Plaintiffs' FLSA Claim is seemingly based upon Plaintiffs' allegation that '21' Club failed to pay them at the proper overtime hourly rate for hours worked in excess of forty (40) hours per workweek. Such claim should be dismissed because it is subject to the grievance and arbitration procedures set forth in the CBA.

Prior to the United States Supreme Court's recent decision in 14 Penn Plaza LLC v. Pyett, 129 S. Ct. 1456, 173 L. Ed. 2d 398, 2009 U.S. LEXIS 2497 (2009), the law in the Second Circuit was that an arbitration provision in a union-negotiated CBA through which employees purport to waive their right to a federal forum with respect to statutory claims was unenforceable. Id. 2009 U.S. LEXIS 2497, at *13-17.  In other words, prior to the Pyett decision, the Second Circuit had held that a collective bargaining agreement could not waive a covered workers' rights to a judicial forum for causes of action created by Congress.  Id.

However, in Pyett, the Supreme Court reversed the Second Circuit and held that an arbitration clause in a collective bargaining agreement that is freely negotiated between the union and the employer and which clearly and unmistakably requires employees to arbitrate the claims at issue is enforceable.  Id. 2009 U.S. LEXIS 2497, at *24.  By issuing such a holding, the Supreme Court aligned itself with other courts that had previously enforced arbitration clauses in collective bargaining agreements and, thus, required employees to arbitrate claims brought pursuant to a variety of statutes, including the FLSA. See Leahy v. City of Chicago, 96 F.3d

-19-

228, 232 (7th Cir. 1996); Vadino v. A. Valey Eng'rs, 903 F.2d 253, 266 (3d Cir. 1990); Donahue

v. Susquehanna Collieries Co., 138 F.2d 3, 6-7 (3d Cir. 1943); Freundt v. Allied Tube & Conduit

Corp., No. 06 C 2210, 2007 U.S. Dist. LEXIS 87852, *9 (N.D. Ill. Nov. 29, 2007); Townsend v.

BC Natural Chicken LLC, No. 06-4317, 2007 U.S. Dist. LEXIS 8282, *7-12 (E.D. Pa. Feb. 2,

2007); Bester v. Chicago Transit Auth., No. 86 C 1067, 1991 U.S. Dist. LEXIS 16827, *4-6

(N.D. Ill. Nov. 15, 1991).

      As those cases have held, where, as here, an arbitration provision in a collective

bargaining agreement is broad enough to cover FLSA claims and the dispute at issue requires the

interpretation of the parties' collective bargaining agreement, then the parties must comply with

the terms of the arbitration provision and arbitrate their dispute.  See Leahy, 96 F.3d at 232;

Vadino, 903 F.2d at 265-266; Donahue, 138 F.2d at 6-7; Freundt, 2007 U.S. Dist. LEXIS 87852,

at *8-10; Townsend, 2007 U.S. Dist. LEXIS 8282, at *12; Bester, 1991 U.S. Dist. LEXIS 16827,

at *4-6.  Stated another way, there is nothing in the FLSA that precludes FLSA claims from

being subject to the terms of an arbitration provision in a collective bargaining agreement.  See

Leahy, 96 F.3d at 232; Vadino, 903 F.2d at 265-266; Donahue, 138 F.2d at 6-7; Freundt, 2007

U.S. Dist. LEXIS 87852, at *8-10; Townsend, 2007 U.S. Dist. LEXIS 8282, at *12; Bester, 1991

U.S. Dist. LEXIS 16827, at *4-6.

      In this case, the CBA provides that any complaints, grievances or disputes concerning the

application, interpretation or construction of the CBA, or any of its terms, conditions or

provisions must proceed through the grievance process and then to arbitration.  (CBA at Art. 36,

¶¶a, b, c; Art. 37; McGuire Decl. ¶8, Ex. D at pgs. 3-5).  Clearly, this provision is broad enough

to cover Plaintiffs' FLSA Claim.  See Leahy, 96 F.3d at 232 (holding that arbitration provision in

collective bargaining agreement is broad enough to cover FLSA claims where such provision

calls for arbitration of disputes not resolved by the collective bargaining agreement's grievance procedure); Vadino, 903 F.2d at 265-266 (holding that arbitration provision in collective bargaining agreement that required unresolved disputes to be submitted to arbitration was broad enough to cover plaintiffs' FLSA claim).

Here, Plaintiffs have conceded, through the Union's past practice and their own individual past practice, that wage and hour disputes (including the calculation of overtime) are subject to the CBA's arbitration provision. As set forth above, the Union has participated in multiple grievances and/or arbitrations regarding wage and hour disputes in the past. (CBA at Sched. D; McGuire Decl. ¶¶12-20, Exs. H-P). Union members, including many of the individuals who are Plaintiffs in the instant matter, have participated in such grievances and arbitrations and some of these decisions are attached to the CBA. Simply stated, with such prior knowledge and consent, Plaintiffs cannot now argue that their FLSA Claim somehow falls outside of the parameters of the CBA's grievance and arbitration provisions or that they were unaware that their FLSA Claim was subject to such provisions.

Further, the resolution of Plaintiffs' FLSA Claim requires interpretation of the CBA. As an initial matter, Plaintiffs' FLSA Claim relates to overtime, which is expressly covered by the CBA. (CBA at Art. 7, ¶e). Moreover, the CBA provides for employees to be paid at various hourly rates depending on the job responsibilities that they hold on a particular day. (CBA at Art. 6, Sched. A). In addition, if an employee is requested or scheduled to report to work he must be paid for a full day even if he does not work a full day. (Id. at Art. 7, ¶f). If an employee is required to work on one of the holidays set forth in the CBA, then that employee shall be paid at a rate of "double time." (Id. at Art. 12, ¶b). Finally, new hires may be paid at a rate of eighty percent (80%) of the rate for his/her job classification for a period of up to one year. (McGuire

Decl. ¶6, Ex. B at ¶3).  Therefore, in order to ascertain each employee's regular rate and, thus, conclude whether Plaintiffs were properly paid overtime, one must analyze and interpret each of these CBA provisions.                                                                                                    •

In the Second Amended Complaint, Plaintiffs attempt to further define their FLSA Claim by alleging that Defendants failed to factor in "mandatory gratuities paid by the host of the events at which Plaintiffs worked" when calculating Plaintiffs' overtime rate  (Sec. Am. Compl. at ¶24).  However, Plaintiffs' new characterization of the FLSA Claim only serves to further support Defendants' position that the resolution of such claim requires an interpretation of the CBA.  Indeed, assuming *arguendo* that Plaintiffs' legal theory is correct and Defendants were required to include "the mandatory gratuities paid by the host of the events at which Plaintiffs worked" into Plaintiffs' regular rate of pay, then a decision-maker must resolve a host of initial issues such as: (i) the mandatory nature of the tips (*i.e.*, what occasions require the guaranteed 18% gratuity to be paid); (ii) which employees are eligible to receive such tips; (iii) how much each employee is entitled to receive; and (iv) how Defendants were supposed to calculate the tips.  Each of these issues requires the interpretation and analysis of the CBA.

Simply put, determining whether Plaintiffs were paid at the proper overtime rate does not merely require one to consult Schedule A of the CBA (and the subsequent amendments thereto) and "do the math."  Indeed, numerous cases have held that calculating whether the employer properly paid its employees overtime requires the interpretation and analysis of the underlying collective bargaining agreement.  See Vadino, 903 F.2d at 266 ("[i]t follows that in the event of a dispute as to the correct wage rate under a collective bargaining agreement and a consequential claim under the overtime provision of the FLSA, the procedure we envision is to decide the contract interpretation issue through the grievance procedure to arbitration"); see also Leahy, 96

-22-

F.3d at 232 (holding that determination as to whether plaintiffs were properly paid overtime requires interpretation and analysis of collective bargaining agreement); Donahue, 138 F.2d at 6-7 (plaintiffs' claim for unpaid overtime compensation must be arbitrated in accordance with collective bargaining agreement); Freundt, 2007 U.S. Dist. LEXIS 87852, at *7-8 (stating that in order to decide whether overtime pay is due to plaintiff requires an extensive analysis of the collective bargaining agreement); Bester, 1991 U.S. Dist. LEXIS 16827, at *5-6 (claim that plaintiffs were not paid overtime required interpretation of underlying collective bargaining agreement).

In Vadino, a similar case before the Third Circuit, the court held that the plaintiff's claim that he was not paid at the proper regular rate and, thus, was not paid at the proper overtime rate was subject to the collective bargaining agreement's grievance and arbitration procedure. Vadino, 903 F.2d at 266. In dismissing the plaintiff's FLSA claim, the court held that "[i]t follows that in the event of a dispute as to the correct wage rate under a collective bargaining agreement and a consequential claim under the overtime provision of the FLSA the procedure we envision is to decide the contract interpretation issue through the grievance procedure to arbitration." Id. Like the dispute in Vadino, any dispute regarding whether Plaintiffs in the instant matter were paid at the proper overtime rate must be addressed through the CBA's

grievance and arbitration procedures.  Therefore, the issue of whether Plaintiffs were properly

paid overtime is governed by the CBA and is subject to the CBA's arbitration provision.[7]

In light of the above, Plaintiffs' FLSA Claim must be dismissed for failure to exhaust the

remedies specified in the CBA.

---

[7] To the extent that Plaintiffs are somehow alleging in support of their FLSA Claim that they were not paid for certain work duties and, thus, were not paid overtime, such allegation should not save Plaintiffs' FLSA Claim from dismissal.  See Leahy, 96 F.3d at 232.  In Leahy, the Seventh Circuit held that the plaintiffs' collective bargaining agreement precluded their claim that they were entitled to overtime pay for meal periods.  Id.  The plaintiffs had brought their claims pursuant to the FLSA and claimed that since they were required to perform certain work duties during their meal period, they should have been paid overtime for such work to the extent that it brought them beyond forty work hours per week.  Id. at 231.  The court noted that the collective bargaining agreement clearly required that the employees receive overtime rates for overtime hours and that "[t]he FLSA requires no more."  Id. at 232.  The court then held that "the individual inquiry facilitated by the grievance process is the most efficient way to determine whether an officer's meal period should be compensable work time."  Id.  Similarly, in this case, the CBA provides that employees who work in excess of forty (40) hours per week are to be paid overtime at a rate of time and a half their regular rate, which comports with the FLSA.  Accordingly, the CBA's grievance and arbitration provisions are the most efficient way to determine whether Plaintiffs were paid at the proper overtime rate.

## CONCLUSION

For all the foregoing reasons, this Court should grant Defendants' Motion to Dismiss in all respects and provide such other and further relief, including costs and attorneys' fees, as the Court deems just and proper.

Dated:  New York, New York
        November 17, 2009

                     Respectfully submitted,

                     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: _____
              Jonathan Stoler
              Eric Raphan

              30 Rockefeller Plaza
              Suite 2400
              New York, New York  10112
              Tel.:  (212) 653-8700
              Fax:  (212) 653-8701

              *Attorneys for Defendants*