Jonathan Stoler
Eric Raphan
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza, 24th Floor
New York, New York 10112
Tel.: (212) 653-8700
Fax: (212) 653-8701

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
: 
**RICHARD ALDERMAN, FRANCISCO AZOFEIFA,** : Index No. 09 CV 2418 (TPG)
**ROBERT BRINKMAN, GUSTAVO BRIONES,** :
**MARIO BRITO, SAU LAM CHAN, JOHN** :
**CIMABRANO, ANASTASIOS** :
**CONSTANTINOPOULOS, CARMEN DE BARTOLO,** :
**CLAUDIO DIAS, LUIS HERNAN DIAZ,** :
**LEONARDO ENAMORADO, HARRIS** :
**EROTOKRITOU, FRANCISCO FAJARDO,** :
**FLORES, ROMEO FLORES, EBERHARD** :
**GENZEMANN, CLEBER RAUL GUAMAN, JOSE** :
**GUTIERREZ, ANTONIO LACERRA, LEON** :
**LAHUEC, MICHAEL LEVINE, MICHAEL** :
**MAKROGIANNIS, GUILLERMO MUNOZ,** :
**GANDOLFO NAPOLI, JORGE NUNEZ, THOMAS** :
**RAKOSI, MIGUEL RODRIGUEZ, SWAPAN** :
**ROZARIO, JOSE PENA, PAUL SCHIEVE,** :
**MICHAEL SLATER, JORGE WASHINGTON** :
**VELEZ, JOHN WARD and MARIO ZAMORA,** on :
behalf of themselves and others similarly situated, :
:
        Plaintiffs, :
:
v. :
:
**21 CLUB INC. and ORIENT-EXPRESS HOTELS,** :
**INC. d/b/a 21 CLUB,** :
:
        Defendants. :
:
-----------------------------------------------------------------------x

**DEFENDANTS' REPLY MEMORANDUM OF LAW
<u>IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT................................................................................................................................. 3

I. PLAINTIFFS' NYLL CLAIM IS PREEMPTED BY THE LMRA ...................................... 3

    A. Plaintiffs' NYLL Claim Substantially Depends Upon An Interpretation Of The Terms Of The CBA ................................................................................................ 3

    B. Plaintiffs And Their Union Have Already Conceded That Any Issues Related To The Allocation Of Tips Require Interpretation of the CBA ................. 7

II. PLAINTIFFS' FLSA CLAIM IS SUBJECT TO ARBITRATION ..................................... 8

    A. Plaintiffs' FLSA Claim Requires An Interpretation Of The CBA ......................... 8

    B. Plaintiffs' FLSA Claim "Clearly And Unmistakably" Falls Within The Purview Of The CBA's Grievance And Arbitration Provisions ............................. 9

CONCLUSION ........................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Case**                                                                                                                                   **Page**

14 Penn Plaza LLC v. Pyett,
    129 S. Ct. 1456, 173 L. Ed. 2d 398, 2009 U.S. LEXIS 2497 (2009) ........................ 9

Barrentine v. Arkansas-Best Freight Sys., Inc.,
    450 U.S. 728 (1991) .................................................................................................. 10

Bester v. Chicago Transit Auth.,
    No. 86 C 1067, 1991 U.S. Dist. LEXIS 16827 (N.D. Ill. Nov. 15, 1991) ............. 9, 10

Donahue v. Susquehanna Collieries Co.,
    138 F.2d 3 (3d Cir. 1943) ............................................................................................. 9

Ellis v. HarperCollins Publishers, Inc.,
    No. 99 CV 12123, 2000 U.S. Dist. LEXIS 8598 (S.D.N.Y. June 21, 2000) .............. 3

Freundt v. Allied Tube & Conduit Corp.,
    No. 06 C 2210, 2007 U.S. Dist. LEXIS 87852 (N.D. Ill. Nov. 29, 2007) ............. 9, 10

Gilmer v. Interstate/Johnson Lane Corp.,
    500 U.S. 20 (1991) ..................................................................................................... 10

Gordon v. Kaleida Health,
    08-CV-378S, 2008 U.S. Dist. LEXIS 96144 (W.D.N.Y. Nov. 25, 2008) .................. 8

Hernandez v. Conriv Realty Assocs.,
    116 F.3d 35 (2d Cir. 1997) ...................................................................................... 6, 7

Heyer v. Okun,
    No. 03 Civ. 2218 (NRB), 2003 U.S. Dist. LEXIS 14495 (S.D.N.Y. Aug. 20, 2003) ... 3

Leahy v. City of Chicago,
    96 F.3d 228 (7th Cir. 1996) .................................................................................. 9, 10

Levy v. Verizon,
    498 F. Supp. 2d 586 (E.D.N.Y. 2007) ..................................................................... 3, 4

Lingle v. Norge Div. of Magic Chef, Inc.,
    486 U.S. 399 (1988) ..................................................................................................... 8

Livadas v. Bradshaw,
    512 U.S. 107 (1994) .................................................................................................. 5, 6

Medrano v. Excel Corp.,
    985 F.2d 230 (5th Cir. 1993) ....................................................................................... 4

O'Rourke v. Carmen M. Parisco, Inc.,
    501 F. Supp. 2d 445 (W.D.N.Y. 2007) ............................................................... 3, 7, 8

Salamea v. Macy's East, Inc.,
    426 F. Supp. 2d 149 (S.D.N.Y. 2006) ............................................................................3

Torres v. Four Seasons Hotel of New York,
    715 N.Y.S.2d 28 (1st Dep't 2000) .................................................................................5

Townsend v. BC Natural Chicken LLC,
    No. 06-4317, 2007 U.S. Dist. LEXIS 8282 (E.D. Pa. Feb. 2, 2007) ..........................10

Vadino v. A. Valey Eng'rs,
    903 F.2d 253 (3d Cir. 1990) .....................................................................................9, 10

Vera v. Saks & Co.,
    335 F.3d 109 (2d Cir. 2003) ......................................................................................3, 4

## PRELIMINARY STATEMENT

Defendants '21' Club, Inc. d/b/a '21' Club ("'21' Club") and Orient Express Hotels Inc. ("Orient Express Hotels") ('21' Club and Orient Express Hotels are collectively referred to herein as "Defendants") respectfully submit this Reply Memorandum of Law in further support of their Motion to Dismiss ("Motion") Plaintiffs' Second Amended Complaint. As set forth more fully in Defendants' Principal Brief in support of its Motion ("Principal Brief" or "Prin. Br."), Plaintiffs' Second Amended Complaint fails to set forth the precise nature of their claims and should be dismissed on this basis alone. Moreover, even if Plaintiffs' new allegations are sufficiently plead to save their claims from dismissal, the claims still must be dismissed because Plaintiffs' NYLL Claim is preempted by the LMRA and their FLSA Claim is subject to arbitration. In opposition to the Motion, Plaintiffs submit an Opposition Brief ("Opposition Brief" or "Opp. Br.") that is rife with citations to irrelevant cases and misstatements of applicable law. Accordingly, Defendants' Motion should be granted by this Court.

With respect to their NYLL Claim, Plaintiffs first argue that such claim is not preempted because Plaintiffs are not directly challenging the legality of any particular CBA provision in the Second Amended Complaint. However, a closer review of Plaintiffs' pleadings and arguments shows that this is exactly what they are attempting to do. Plaintiffs concede that Defendants are allocating a specific amount of tips in accordance with the relevant provisions of the CBA but then allege that such contractually agreed allocation nevertheless violates the NYLL. That Plaintiffs conveniently chose to omit any reference to the CBA in their Second Amended Complaint does not obviate their well-settled legal obligation to arbitrate their NYLL Claim.

Plaintiffs next argue that their NYLL Claim is not preempted because § 196-d of the NYLL creates an independent right to recovery for Plaintiffs. However, this argument ignores

the plethora of case law compelling the arbitration of claims that specifically allege violations of the NYLL. Plaintiffs also attempt to minimize their undisputed history of grieving and/or arbitrating the very issues that form the basis of their NYLL Claim. However, Plaintiffs cannot avoid the fact that such history constitutes an admission that their NYLL Claim is subject to the CBA's grievance/arbitration procedures and is, thus, preempted by the LMRA.

Plaintiffs similarly fail to set forth any convincing arguments showing why their FLSA Claim should not be subject to arbitration. Plaintiffs first argue that their FLSA Claim does not require a decision-maker to interpret the CBA and is, thus, not subject to the CBA's grievance/arbitration provisions. However, in order to determine whether Plaintiffs' FLSA Claim has any merit, a decision-maker must interpret the relevant portions of the CBA and determine issues such as: (i) the mandatory nature of the tips (i.e., which events qualify for guaranteed tips); (ii) which employees are actually eligible to receive such tips; (iii) how much each employee is entitled to receive; and (iv) how Defendants were supposed to calculate the tips. Plaintiffs then argue that their FLSA Claim is not subject to arbitration because the CBA's grievance and arbitration provisions do not specifically reference the FLSA and, thus, fail to "clearly and unmistakably" require Plaintiffs to do so. However, Plaintiffs' argument ignores the abundance of cases that have required plaintiffs to arbitrate FLSA claims despite the fact that the CBA at issue did not specifically reference the FLSA in its grievance/arbitration provisions. Plaintiffs further ignore their undisputed awareness that FLSA claims are subject to the CBA's provisions, as established by their extensive history of grieving and/or arbitrating such claims. Accordingly, for the reasons set forth in the Principal Brief and below, Plaintiffs' Second Amended Complaint should be dismissed.

# ARGUMENT[1]

## I.  PLAINTIFFS' NYLL CLAIM IS PREEMPTED BY THE LMRA

### A.  Plaintiffs' NYLL Claim Substantially Depends Upon An Interpretation Of The Terms Of The CBA

Defendants' Principal Brief (pp. 12-13) makes clear that New York courts have routinely dismissed wage claims brought under the NYLL as preempted where, as here, such claims substantially depend upon an interpretation of the terms of a CBA. See Vera v. Saks & Co., 335 F.3d 109, 115 (2d Cir. 2003); Levy v. Verizon, 498 F. Supp. 2d 586, 597 (E.D.N.Y. 2007).[2]

Plaintiffs initially attempt to distinguish the above cases from the instant matter by asserting that the plaintiffs' claims in those cases "directly challenged collective bargaining provisions." (Opp. Br. p. 10). However, such purported distinction is wholly irrelevant. The mere fact that Plaintiffs failed to reference the CBA in the Second Amended Complaint does not save their NYLL Claim from preemption. See Salamea, 426 F. Supp. 2d at 152 (plaintiff's claim for unpaid wages under NYLL § 198 are preempted even though plaintiff neither referred to nor relied upon the collective bargaining agreement in her complaint).[3]

Plaintiffs further attempt to avoid dismissal of the NYLL Claim by arguing that the Second Circuit's decision in Vera does not apply to the case at bar. (Opp. Br. at p. 10). Contrary

---

[1] As set forth in Defendants' Principal Brief (pp. 11-12), the Second Amended Complaint should be dismissed because Plaintiffs failed to adhere to this Court's explicit instructions to file a Second Amended Complaint "with the required specific allegations of wrongdoing." Indeed, despite such clear instructions and being given over two months to submit a Second Amended Complaint that sufficiently amplifies their claims with factual allegations, Plaintiffs have done nothing more than include a few additional meaningless and specious allegations in a half-hearted attempt to save their claims from dismissal. Accordingly, this Court should dismiss the Second Amended Complaint on this basis alone.

[2] See also O'Rourke v. Carmen M. Parisco, Inc., 501 F. Supp. 2d 445, 450 (W.D.N.Y. 2007). Salamea v. Macy's East, Inc., 426 F. Supp. 2d 149, 155 (S.D.N.Y. 2006); Heyer v. Okun, Inc., No. 03 Civ. 2218 (NRB), 2003 U.S. Dist. LEXIS 14495, *10 (S.D.N.Y. Aug. 20, 2003); Ellis v. HarperCollins Publishers, Inc., No. 99 CV 12123, 2000 U.S. Dist. LEXIS 8598, *5-6 (S.D.N.Y. June 21, 2000).

[3] Significantly, Plaintiffs fail to meaningfully distinguish Salamea from the instant matter. By neglecting to do so, Plaintiffs effectively concede that their failure to reference the CBA in their Second Amended Complaint cannot save their NYLL Claim from preemption.

to Plaintiffs' contentions, Vera is strikingly similar to the instant matter and supports the dismissal of the NYLL Claim. In Vera, the plaintiff alleged that a charge-back policy set forth in the collective bargaining agreement between the plaintiff's union and his employer constituted an unlawful wage deduction in violation of NYLL § 193. Id. at 113. Like Plaintiffs in this case, the plaintiff in Vera attempted to avoid having his NYLL claim preempted by arguing that he was not seeking any relief under the collective bargaining agreement and, instead, was only asserting independent statutory claims under the NYLL. Id. at 115. The Second Circuit wholly rejected the plaintiff's argument, held that the plaintiff's NYLL claim was preempted and stated that "[i]n our view, plaintiff's challenge to the lawfulness of a term of the CBA will require substantial interpretation of the CBA." Id. at 116.[4]

Like the plaintiff in Vera, Plaintiffs are alleging that Defendants' allocation of tips pursuant to Article 26 and Schedule D of the CBA is unlawful. Such contract terms essentially provide that Defendants must guarantee its service staff gratuities in the amount of 18% of the total bill for certain events. Despite such contract language, Plaintiffs allege that they are entitled to more than 18% and that '21' Club's failure to provide them with more than 18% is unlawful and in violation of the NYLL. In essence, Plaintiffs are directly challenging the legality of a contract provision to which they have long agreed and followed. As the Second Circuit held in Vera, such a challenge in and of itself requires substantial interpretation of the CBA and warrants dismissal of Plaintiffs' NYLL Claim.

Defendants' Principal Brief (pp. 4-5, 14-15) sets forth a number of issues that a decision-maker would need to interpret in Article 26 and Schedule D in order to determine whether '21' Club properly allocated tips. For example, it may be unclear whether Article 26's "guarantee" of

---

[4] See also Levy, 498 F. Supp. 2d at 597-598; Medrano v. Excel Corp., 985 F.2d 230, 234 (5th Cir. 1993).

an 18% gratuity is a minimum guarantee or a maximum guarantee. In addition, the decision-maker would be required to interpret which events are considered "pre-arranged affairs, promotional parties or similar functions" and, thus, covered by Article 26 and Schedule D.[5] A decision-maker would also be required to interpret which positions are considered "banquet service staff" positions, what portion of the 18% gratuity each banquet service staff member is entitled to and how to calculate the 18% gratuity. Further, one would have to interpret what the Union and '21' Club meant by "total bill" and whether such term is to include ancillary charges such as room rental fees. One would also have to interpret the arbitration decisions set forth in Schedule D of the CBA, which are incorporated into the CBA by reference. (CBA at Art. 26). Thus, whether '21' Club improperly retained any portion of Plaintiffs' tips is necessarily subject to the interpretation of the CBA.[6]

In addition, Plaintiffs ignore relevant facts and legal precedent by broadly asserting that their NYLL Claim is not preempted by the LMRA because § 196-d of the NYLL "creates an independent right to recover regardless of the terms of the [CBA]." (Opp. Br. at p. 8). Plaintiffs' oversimplification must be rejected. In fact, if one were to take Plaintiffs' argument to its logical conclusion, then any time a unionized employee alleged that his/her employer engaged in conduct that violates any provision of the NYLL (or any other statute) such claim would be immune from preemption under the LMRA because the claim would create "an independent right to recover." This same argument was rejected by the cases cited by Defendants above.

---

[5] For example, is a "prearranged affair" interpreted as one scheduled through a simple telephone reservation or through a signed sales contract?

[6] The instant matter is also analogous to Torres v. Four Seasons Hotel of New York, 715 N.Y.S.2d 28 (1st Dep't 2000). In Torres, the plaintiffs sought to avoid arbitration by commencing an action in court alleging that the employer had improperly pooled employee tips in violation of NYLL § 196-d, which is the very same section of the NYLL upon which Plaintiffs are relying in the case at bar. Id. at 29. However, the Court dismissed the plaintiffs' NYLL claim and held that they were required to arbitrate such claim.

In another flawed attempt to support their position, Plaintiffs mistakenly rely on a plethora of cases that are clearly irrelevant to and/or distinguishable from the instant matter. Many of the cases upon which Plaintiffs rely: (1) are wholly unrelated to wage and hour issues; (2) involve collective bargaining agreements that do not contain any provisions that are relevant to the parties' dispute; (3) involve disputes arising out of individual agreements between the plaintiffs and the employers; and/or (4) involve allegations regarding an employer's policy that was not addressed by any provision in the parties' collective bargaining agreement.

For example, Livadas v. Bradshaw, 512 U.S. 107 (1994), is completely distinguishable from the instant matter. In Livadas, the defendant-employer refused to pay a terminated employee her remaining earned wages at the time of her discharge but paid her a few days later in violation of California law. The employee filed a claim with California's Commissioner of Labor. The Commissioner refused to enforce the employee's claims because her employment was governed by a collective bargaining agreement and, thus, was preempted by § 301 of the LMRA. Id. at 110-113. The Supreme Court held that the employee's claims were not preempted, significantly finding that there was no suggestion by either party that any portion of the labor agreement attempted to address the timing of the payment of wages upon termination. Id. at 125. That is distinguishable from this case where an interpretation of Article 26 and Schedule D of the CBA is necessary to determine, among other things, when payment obligations are triggered, to whom payments should be paid and how much should be paid.[7]

---

[7] Plaintiffs' reliance on Hernandez v. Conriv Realty Assocs., 116 F.3d 35 (2d Cir. 1997) is similarly misplaced. In Hernandez, the plaintiff based his breach of contract, fraud and unpaid wages claims on his assertion that his employer induced him to terminate his union membership and to work for the employer as a non-union worker. The plaintiff also alleged that the employer entered into a verbal contract, *individually* with the plaintiff, setting forth terms and conditions of employment similar to what he had as a union member. The Second Circuit held that the plaintiff's claims arising out of the individual contract between the plaintiff and the employer were not preempted by the LMRA because the individual nature of the plaintiff's claims did not require an interpretation of any particular provision in the collective bargaining agreement. Id. at 39-40. Here, Plaintiffs' NYLL Claim requires the decision-
(footnote continued)

## B. Plaintiffs And Their Union Have Already Conceded That Any Issues Related To The Allocation Of Tips Require Interpretation Of The CBA

As set forth more fully in Defendants' Principal Brief (pp. 15-17), this Court should deem Plaintiffs' NYLL Claim to be preempted because Plaintiffs have already conceded that any issues related to the allocation of tips require interpretation of the CBA and, thus, are subject to the CBA's grievance and arbitration provisions.[8]

It is indisputable that the Union's and Plaintiffs' long history of submitting the very issues that form the basis of the NYLL Claim to the CBA's grievance/arbitration process establishes that such claim is preempted. As the Court noted in O'Rourke, 501 F. Supp. 2d at 450 in support of its decision that the plaintiffs' NYLL claim was preempted:

> Tellingly, Plaintiffs do not contradict Defendant's representation that at least two of Plaintiffs' claims in this action, overtime for inspection and washing of trucks, were subject to a prior grievance processed to conclusion under the CBAs, thus demonstrating that both the Union, as agent of Plaintiffs for purposes of enforcing the CBAs, and Defendant treated such claims as within the exclusive grievance procedure defined in the CBAs. Accordingly, regardless of the specific legal theory of recovery for Plaintiffs' claims, including Plaintiffs' assertions of breach of contract, quantum meruit, or a violation of Labor Law, Plaintiffs' entitlement to any part of the back-pay sought under the Complaint is "inextricably intertwined" with relevant provisions of the CBAs, specifically, whether Defendant's failure to pay the asserted back-pay, for the reasons alleged in the

---

maker to do more than merely consult the CBA. The decision-maker must interpret various provisions of the CBA such as Article 26 and Schedule D, in order to determine the merit of Plaintiffs' claim. Thus, Hernandez is clearly distinguishable from this case.

[8] The Union and many of its members including several of the named Plaintiffs have repeatedly participated in grievances and/or arbitrations regarding '21' Club's calculation and allocation of tips. Examples of such participation include: (1) in July 2009 – four months after Plaintiffs commenced the instant action – Plaintiffs' Union filed a Class Action Grievance setting forth claims that are identical to the claims set forth by Plaintiffs in this case; (2) in 1995, the Union filed a "Class Action Grievance Filed On Behalf Of The Banquet Department" alleging that '21' Club had improperly withheld the private banquet workers' tips; (3) in March 2009, the Union grieved that '21' Club's "policy on room fees for catered events unfairly affect[ed] income for tipped employees"; (4) in December 2008, the Union availed itself of the CBA's grievance mechanism by submitting a letter to '21' Club alleging that '21' Club had improperly retained a portion of the private banquet employees' tips; (5) in 1989, the Union and '21' Club arbitrated the distribution of tips among employees who worked certain pre-arranged functions; (6) in 1993, the Union and '21' Club arbitrated whether Captains are required to share in the responsibility for tipping Busboys; and (7) in 1996, the Union filed a grievance against '21' Club regarding how '21' Club calculates and pays the gratuities of the banquet staff workers. (Prin. Br. at pp.7-9).

Complaint as Plaintiffs now demand, violated the CBAs and whether the CBAs' grievance procedures apply to Plaintiffs' claims.

Plaintiffs essentially ignore O'Rourke in their Opposition Brief and weakly argue that the Union's and Plaintiffs' well established grievance/arbitration history is irrelevant. In support of this assertion, Plaintiffs mistakenly rely upon Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988) and Gordon v. Kaleida Health, 08-CV-378S, 2008 U.S. Dist. LEXIS 96144 (W.D.N.Y. Nov. 25, 2008). Such reliance misses the mark as those cases, which are factually dissimilar to the instant matter, merely suggest that not every dispute between an employer and an employee requires the interpretation of the underlying collective bargaining agreement.

For more than 20 years, Plaintiffs and the Union have repeatedly grieved and/or arbitrated the very issues that Plaintiffs now raise in the Second Amended Complaint. Plaintiffs' and the Union's undisputed history establishes that Plaintiffs are well aware that such issues are inextricably intertwined with the CBA, require a decision-maker to interpret the CBA and must be resolved through the CBA's grievance/arbitration provisions. Hence, Plaintiffs' NYLL Claim is preempted by § 301 of the LMRA and should be dismissed.

## II. PLAINTIFFS' FLSA CLAIM IS SUBJECT TO ARBITRATION

### A. Plaintiffs' FLSA Claim Requires An Interpretation Of The CBA

Plaintiffs' FLSA Claim should also be dismissed because it is subject to the grievance and arbitration procedures set forth in the CBA. In their Opposition Brief, Plaintiffs first argue that their FLSA Claim should not be dismissed because such claim does not require an interpretation of the CBA. As set forth in the Principal Brief and below, such argument fails.

In support of their argument, Plaintiffs assert that their FLSA Claim is based upon the following: "... in calculating Plaintiffs' overtime pay, Defendants failed to factor the mandatory charges collected at private events into Plaintiffs' regular rate of pay." (Opp. Br. p. 15).

However, Plaintiffs' characterization of the FLSA Claim only serves to further support Defendants' position that the resolution of such claim requires an interpretation of the CBA.[9]

### B. Plaintiffs' FLSA Claim "Clearly And Unmistakably" Falls Within The Purview Of The CBA's Grievance And Arbitration Provisions

Plaintiffs further argue that their FLSA Claim does not fall within the purview of the CBA's grievance and arbitration provisions and that the Supreme Court's decision in 14 Penn Plaza LLC v. Pyett, No. 07-581, 2009 U.S. LEXIS 2497 (Apr. 1, 2009) is inapplicable to the instant matter. Plaintiffs are wrong.

Specifically, Plaintiffs maintain that Pyett is inapplicable because the CBA does not specifically preclude a lawsuit concerning Plaintiffs' individual statutory rights under the FLSA. (Opp. Br. at p. 16). However, such assertion is entirely misplaced for several reasons. First, the Supreme Court in Pyett did not hold that an arbitration provision must specifically reference a statute in order for such provision to "clearly and unmistakably" require employees to arbitrate their claim. Thus, the fact that the CBA's arbitration provision does not specifically reference the FLSA is irrelevant. Second, the fundamental purpose of the "clear and unmistakable" standard is to ensure that unionized employees are put on notice that they must arbitrate certain claims as opposed to commencing an action in court. Plaintiffs' and the Union's undisputed history of grieving and arbitrating the very issues that form the basis of Plaintiffs' FLSA Claim –

---

[9] Assuming Plaintiffs' legal theory is correct and Defendants were required to include "the mandatory charges collected at private parties" into Plaintiffs' regular rate of pay, then a decision-maker must resolve a host of initial issues such as: (i) the mandatory nature of the tips (i.e., what occasions require the guaranteed 18% gratuity to be paid); (ii) which employees are eligible to receive such tips; (iii) how much each employee is entitled to receive; and (iv) how Defendants calculated the tips. As set forth in Defendants' Principal Brief, numerous courts have held that calculating whether the employer properly paid its employees overtime requires the interpretation and analysis of the underlying collective bargaining agreement. Vadino v. A. Valey Eng'rs, 903 F.2d 253, 266 (3d Cir. 1990); Leahy v. City of Chicago, 96 F.3d 228, 232 (E.D.N.Y. 2007); Donahue v. Susquehanna Collieries Co., 138 F.2d 3,6-7 (3d Cir. 1943); Freundt v. Allied Tube & Conduit Corp., No. 06 C 2210, 2007 U.S. Dist. LEXIS 87852, *7-8 (N.D. Ill. Nov. 29, 2007); Bester v. Chicago Transit Auth., No. 86 C 1067, 1991 U.S. Dist. LEXIS 16827, *5-6 (N.D. Ill. Nov. 15, 1991).

including the Union's June 2004 grievance that '21' Club was not calculating overtime properly – unequivocally establishes that Plaintiffs were well aware that they are required to arbitrate such a dispute. Finally, because Plaintiffs' FLSA Claim concerns the application, interpretation and construction of the CBA, the CBA's arbitration provision clearly and unmistakably covers such claim.[10]

## CONCLUSION

For all the reasons set forth herein and in Defendants' Principal Brief, this Court should grant Defendants' Motion to Dismiss in all respects and provide such other and further relief, including costs and attorneys' fees, as the Court deems just and proper.

Dated:  New York, New York
        December 10, 2009

                                    Respectfully submitted,
                                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                                    By: /s/ Jonathan Stoler
                                        Jonathan Stoler
                                        Eric Raphan
                                    30 Rockefeller Plaza
                                    Suite 2400
                                    New York, New York  10112
                                    Tel.:  (212) 653-8700
                                    Fax:   (212) 653-8701
                                    *Attorneys for Defendants*

---

[10] Plaintiffs further maintain that the Pyett decision does not disturb the Supreme Court's holding in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) and Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728 (1981) that the arbitration of "collective bargaining agreement-based claims" does not preclude judicial resolution of statutory claims. (Opp. Br. at pp. 14-15). This argument is irrelevant to the issues at hand here. The Supreme Court in Gilmer actually enforced an arbitration agreement in the plaintiff's stock exchange registration application that required him to arbitrate all claims that arose between him and his employer. Thus, Gilmer fails to support Plaintiffs' position. In Barrentine, the Supreme Court held that the plaintiffs could pursue their FLSA claim in federal court because the specific nature and factual basis of such claim was an issue of statutory construction that must be decided by the courts and did not require an interpretation of the collective bargaining agreement. Id. at 738 fn. 13. The Supreme Court did not hold that an FLSA claim cannot be subjected to a collective bargaining agreement's arbitration provision simply because the arbitration provision does not specifically reference the FLSA. Indeed, numerous courts since Barrentine have subjected FLSA claims to a collective bargaining agreement's grievance/arbitration provisions regardless of whether such provisions specifically referenced the FLSA. See Leahy, 96 F.3d at 232; Vadino, 903 F.2d at 265-266; Freundt, 2007 U.S. Dist. LEXIS 87852, at *8-10; Townsend v. BC Natural Chicken LLC, No. 06-4317, 2007 U.S. Dist. LEXIS 8282, *12 (E.D. Pa. Feb. 2, 2007); Bester, 1991 U.S. Dist. LEXIS 16827, at *4-6.