UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------x
:
RICHARD ALDERMAN, FRANCISCO :
AZOFEIFA, ROBERT BRINKMANN, :
GUSTAVO BRIONES, et al., on behalf of : 09 Civ. 2418 (TPG)
themselves and others similarly situated, :
: **OPINION**
Plaintiffs, :
:
- against - :
:
:
21 CLUB INC. and ORIENT EXPRESS :
HOTELS, INC. d/b/a 21 CLUB, :
:
Defendants. :
---------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/20/10

Plaintiffs, current and former employees of the storied New York City restaurant the '21' Club, bring this action on behalf of all non-exempt persons employed at the '21' Club who work private banquets. This action is against defendants '21' Club, Inc. d/b/a '21' Club and Orient Express Hotels, Inc.[1] There are two claims. The first is under New York Labor Law ("NYLL") § 196-d and is for unpaid gratuities. The second is under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* for unpaid overtime wages.

Defendants move under Fed. R. Civ. P. 12(b) to dismiss (1) plaintiffs' NYLL claim as preempted by Section 301 of the Labor

---

[1] '21' Club, Inc. d/b/a '21' Club and Orient-Express Hotels Inc. are incorrectly denominated in the caption as "21 Club Inc." and "Orient-Express Hotels, Inc. d/b/a 21 Club," respectively.

1

Management Relations Act ("LMRA"), 29 U.S.C. § 185, and (2) plaintiffs' FLSA claim on the ground that it is subject to the grievance and arbitration procedures set forth in the collective bargaining agreement between plaintiffs' labor union and the '21' Club.

Because matters outside the complaint are referred to in the motion, the court will consider it to be a motion for summary judgment under Fed. R. Civ. P. 56.

The motion is denied.

## BACKGROUND

The Facts

Except where otherwise indicated, the following facts are taken from the second amended complaint. For purposes of this motion, plaintiffs' allegations are assumed to be true.

Within the past three years, plaintiffs were – and some are still – employed as barbacks, bartenders, captains, waiters, bussers, and sommeliers at private banquets held at the '21' Club. The complaint alleges that defendants are corporations that operate the '21' Club. Defendants, however, maintain that Orient Express Hotels never employed any of the plaintiffs.

Plaintiffs belong to UNITE Hotel Employees & Restaurant Employees Union, Local 100 (the "Union"), which '21' Club recognizes as the sole and exclusive bargaining agent of its banquet service employees. The terms and conditions of plaintiffs' employment are governed by a

2

collective bargaining agreement between the Union and the '21' Club ("CBA"). While the most recent CBA was set to expire on October 31, 1998, the Union and the '21' Club entered into several memoranda of agreement and addendums to extend the effective date of the CBA until October 31, 2011.

The CBA comprehensively sets forth the terms and conditions of employment at the '21' Club. The CBA includes the hourly rates for each position and job title for all covered employees. There also is a provision that outlines what constitutes a standard workweek for full-time employees – five work days consisting of eight hours per day, totaling 40 hours per week. If an employee is required to work a sixth day, he is to be compensated at a rate of one-and-one-half times his regular hourly rate for all overtime hours worked.

The '21' Club, like many restaurants, can accommodate banquets, promotional parties, and other similar pre-arranged functions. In connection with these events, the '21' Club charges a mandatory service fee equal to a percentage of the costs, though it is unclear what this percentage is. This service fee is added to the bill because unlike ordinary restaurant service where customers tip their servers directly, individual servers are not permitted to collect tips from customers attending these banquet-type functions.

The CBA contains a provision that specifically addresses the allocation of gratuities to employees who work at banquet-type functions:

3

> For all pre-arranged affairs, promotional parties or similar functions ("parties") where no collection of tips or gratuities by individual employees is permitted, ['21' Club] agrees that the banquet service staff shall be guaranteed gratuities in the amount of eighteen (18%) percent of the total bill(s) for the party, which bill(s) shall include both food and liquor as per Arbitrator George Sabatella's Awards, attached as Exhibit D.

The CBA, as amended by the Memorandum of Agreement between the Union and the 21 Club dated November 25, 2003, provides for the following grievance and arbitration procedures:

> All disputes concerning the application, interpretation or construction of this Agreement, or any of its terms, conditions or provisions shall be first discussed by a representative of the Union and the Employer involved within fifteen (15) days of the event giving rise to the dispute or the party raising the grievance reasonably should have become aware of the event giving rise to the dispute.  The grieved party shall provide a written answer to the grievance within five (5) days of the grievance meeting . . .
>
> In the event that the Employer and the Union are unable to settle or resolve the dispute, it <u>may be submitted to arbitration; in which case it must be submitted within thirty (30) days of the written answer above</u> to final arbitration pursuant to the article governing arbitration. (emphasis in original).

In support of their defenses, defendants chronicle a lengthy 20-year history of wages and hours disputes, including disagreements related to the allocation of gratuities, which were submitted to the grievance and arbitration procedures specified in the CBA.  In fact, prior to commencing this action, on December 29, 2008, Union president Bill Granfield sent a letter to the general manager of the '21' Club, Bryan

4

McGuire, which seems to involve the very same issue that now forms the basis of plaintiffs' gratuities claim:

> I am writing to address an issue of great concern to the Union and its members at '21' Club, particularly in the Banquet Department. As you should be aware, in February 2008, the New York State Court of Appeals ruled that restaurants that charge a mandatory service fee in connection with banquets without notifying its customers explicitly in advance that not all of such charge will be distributed to service employees cannot be allowed to retain these monies in whole or in part (*Samiento v. World Yacht, Inc.*, N.Y. Ct. App. Feb. 14, 2008).
>
> It has come to our attention that '21' Club has continued to charge its service fee for banquets without complying with the requirements set forth in the Court of Appeals' ruling. Your failure to adhere to the . . . ruling leads patrons to perceive the service charge as a gratuity and, according to the Court, should be treated as such. Therefore, you must pay 100% of the mandatory service charges for each banquet event held since the date of the ruling to your banquet service staff as a gratuity.
>
> While you may argue that '21' Club paid the employees the contractual gratuity rate for each event, it is necessary at this time that you pay the difference between your service charge rate and the 18% gratuity rate contained in the contract for all events held from the time the ruling was issued to present and while your current service charge language remains in effect.

On January 26, 2009, Bryan McGuire denied that '21' Club improperly retained banquet service staff gratuities, responding that consistent "with longstanding agreements between '21' Club and the Union, the service charge already is distributed to employees. The house retains none of the charge."

Four months after plaintiffs commenced this action, the Union filed a class-action grievance on July 21, 2009 alleging that the '21' Club

5

was withholding gratuities "based on total bills for all pre-arranged affairs, promotional parties, or similar functions where no collection of tips or gratuities by individual employees is permitted."

The legal significance of this history will be described later.

Procedural History

On March 17, 2009, plaintiffs filed the initial complaint, which was later amended on April 2, 2009. On May 13, 2009, defendants moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).

On August 11, 2009, the court issued an opinion dismissing the amended complaint with leave to replead the "required specific allegations of wrongdoing" by October 15, 2009. Alderman v. '21' Club Inc., No. 09 Civ. 2418 (TPG), slip op. at 1 (S.D.N.Y. Aug. 11, 2009).

On October 14, 2009, plaintiffs filed the second amended complaint. Defendants once again move to dismiss.

The court believes that the second amended complaint is pleaded in such a way that the specific defenses asserted by defendants in the motion can be considered.

Plaintiffs' Claims

Plaintiffs bring two claims in this action. One claim is that the '21' Club violated NYLL § 196-d when it imposed a mandatory service fee for banquet-type functions but improperly retained a portion of this service fee that should have been allocated to plaintiffs as a gratuity for working at these events. The other claim alleges that the '21' Club failed to

comply with the FLSA by neglecting to factor the amount of the mandatory service fee it distributed to plaintiffs into plaintiffs' regular rate of pay for purposes of calculating the overtime payments plaintiffs had earned.

**DISCUSSION**

Treatment as Summary Judgment Motion

Before addressing the substance of defendants' motion, the court finds it necessary to determine whether the motion should be addressed as a Rule 12(b) motion to dismiss or as a summary judgment motion. While defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6), they have provided the court with the parties' CBA, copies of grievances filed by plaintiffs dating back to the mid-1990s, and the December 29, 2008 letter from Union president Bill Granfield to '21' Club general manager Bryan McGuire, none of which are referenced in the pleadings.

Consideration of material attached to a defendant's answer or motion to dismiss requires the court to convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence. See Fed. R. Civ. P. 12(d); Friedl v. City of N.Y., 210 F.3d 79, 93 (2d Cir. 2000); see also Global Network Comm'ns, Inc. v. City of N.Y., 458 F.3d 150, 155 (2d Cir. 2006) ("the conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is strictly enforced and mandatory"). The essential inquiry in considering whether *sua sponte*

7

conversion is appropriate "is whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." Krijn v. Pogue Simone Real Estate Co., 896 F.2d 687, 689 (2d Cir. 1990). Before treating the motion as one for summary judgment, the court must be assured that there is no dispute regarding the "authenticity or accuracy" or "relevance" of the documents submitted. Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006). Courts have converted motions to dismiss into motions for summary judgment where a defendant's claim of preemption under Section 301 of the LMRA was based on the collective bargaining agreement appended to the motion to dismiss. See Robinson v. Medevac Midamerica, Inc., No. 06-4042-SAC, 2006 WL 2726794, at *2 (D. Kan. Sept. 22, 2006).

Here, defendants' memorandum of law included a footnote requesting that the court convert the motion to dismiss into a motion for summary judgment if necessary in light of the additional materials submitted in connection with the motion. Plaintiffs then had occasion to respond and submit any further evidence. In fact, plaintiffs availed themselves of this opportunity by attaching an interpretive opinion issued by the New York Department of Labor to their opposition. As such, plaintiffs surely were not deprived of a chance to present facts extrinsic to the pleadings. And plaintiffs do not dispute the authenticity

or accuracy of the CBA, the Granfield letter, or any of the other documents provided to the court.

Under these circumstances, the court will treat defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) as a motion for summary judgment under Fed. R. Civ. P. 56.

The Gratuities Claim

As described earlier, plaintiffs' first claim is under NYLL § 196-d for unpaid gratuities to plaintiffs who worked banquet events at the '21' Club. Defendants contend that this claim in reality is one under Section 301 of the LMRA, 29 U.S.C. § 185, which preempts the application of state labor law. Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The Supreme Court has interpreted Section 301 "as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." Allis-Chalmers Group v. Lueck, 471 U.S. 202, 209 (1985). When a state law claim alleges a violation of a labor contract or when the resolution of a state law claim depends on an interpretation of a collective bargaining agreement, Section 301 preempts that claim. See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 261 (1994). But if a state "prescribes rules or establishes rights and obligations that are independent of a labor

9

contract, actions to enforce such independent rights or rules would not be preempted by section 301." Vera v. Saks & Co., 335 F.3d 109, 115 (2d Cir. 2003). Indeed, the "bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994). In order to determine whether a state law claim is preempted because it requires interpretation of a collective bargaining agreement, the court must analyze whether the "legal character" of the state law claim is truly independent of the rights conferred under the collective bargaining agreement. Salamea v. Macy's East, Inc., 426 F. Supp. 2d 149, 153-54 (S.D.N.Y. 2006).

In the present case, plaintiffs bring their gratuities claim under NYLL § 196-d and not under the CBA. Both § 196-d and the CBA give employees rights in respect to gratuities, although they are worded differently in ways that have significance in this case. Specifically, the CBA guarantees gratuities in the amount of 18% of the total bill for the function. Section 196-d guarantees to the employees whatever has been charged to provide gratuities, without reference to a specific percentage. It is necessary, therefore, for the court to define exactly what plaintiffs' claim is and then to determine whether it fits under § 196-d or under the CBA or both.

The relevant portions of the complaint are paragraphs 21 and 22 in the factual allegations and paragraphs 33 and 34 stating the claim:

10

21. For private events, Defendants charged gratuities to the hosts of the events equal to a percentage of the cost of the events.

22. While Defendants distributed a potion of these gratuities to the service staff that worked these parties, Defendants did not distribute all of the gratuities. Thus, Defendants illegally retained substantial portions of the gratuities paid by private event hosts, instead of distributing them in their entirety to service staff.

...

33. Defendants received gratuities from customers for all private banquets.

34. Defendants retained portions of Plaintiffs' tips and Class members' tips.

On their face, the allegations of the complaint do not refer to 18%. However, they are not precise in excluding the possibility that in fact plaintiffs are seeking the 18% referred to in the CBA. But the court believes that the December 29, 2008 letter of union president Bill Granfield is relevant in construing the nature of the gratuities claim. This letter makes a demand that the '21' Club pay to employees "the difference between your service charge rate and the 18% gratuity rate contained in the contract." The reference to "the contract" presumably means the CBA. Thus, in late 2008, the Union was claiming that the service charges were greater than the 18% referred to in the CBA and was demanding that the entire amount be paid to the employees.

The court concludes that the complaint should be taken on its own terms and cannot properly be construed as actually referring only to the 18%.

11

The complaint asserts that it is made under NYLL § 196-d. That statute provides:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. This provision shall not apply to the checking of hats, coats or other apparel. Nothing in this subdivision shall be construed as affecting the allowances from the minimum wage for gratuities in the amount determined in accordance with the provisions of article nineteen of this chapter nor as affecting practices in connection with banquets and other special functions where a fixed percentage of the patron's bill is added for gratuities which are distributed to employees, nor to the sharing of tips by a waiter with a busboy or similar employee.

The first sentence of the statute prevents an employer from taking the gratuities received by an employee. The relevant part of the last sentence states that nothing in the statute affects the practice in connection with functions where a fixed percentage is added to the patron's bill for gratuities which are distributed to employees. The statute is somewhat confusing because the assurance of the employee's rights in the first sentence is followed by the latter portion of the last sentence which states that the statute is not applicable to functions where an amount is added to the patron's bill for gratuities.

Plaintiffs cite authorities that they contend give them rights under the statute. It is not the province of the court on the present motion to resolve questions which may arise as to the exact construction of the statute. It is sufficient to say that, as far as state law is concerned,

12

plaintiffs would surely be entitled to attempt to recover under the statute. What defenses there may be under state law, and how the issues are resolved, remains to be seen. One thing is clear under § 196-d, and that is that there is no reference to 18% or any limit of 18%.

On the question of whether plaintiffs' gratuities claim should be construed as in reality coming under the CBA so that federal law applies, the language of the CBA was quoted earlier in this opinion. The CBA only guarantees 18%. Consequently, a claim for more than 18% is not properly one under the CBA. It is properly made under § 196-d.

The result is, and the court so holds, that the gratuities claim is not preempted by federal law.

The court notes the contention that the history of the Union submissions by way of grievances constitutes an admission that the gratuities claim in the present case properly falls within the ambit of the CBA. The court rejects this argument. The employees did not give up their right to assert a gratuities claim under § 196-d in the present action.

The Overtime Claim

Plaintiffs contend that, in calculating overtime, the '21' Club failed to include in the rate of pay, on which such overtime would be calculated, the employees' share of the special function service fees. Defendants argue that plaintiffs' FLSA claim warrants dismissal because

13

it is subject to the grievance and arbitration procedures set forth in the CBA.

A collective bargaining agreement cannot preclude a lawsuit concerning individual statutory rights unless the arbitration clause in the agreement was "clear and unmistakable" that the parties intended to arbitrate such individual claims. See Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 79-80 (1998). A "clear and unmistakable" waiver exists where one of two requirements is met: (1) if the arbitration clause contains an explicit provision whereby an employee specifically agrees to submit all causes of action arising out of his employment to arbitration; or (2) where the arbitration clause specifically references or incorporates a statute into the agreement to arbitrate disputes. See Rogers v. N.Y. Univ., 220 F.3d 73, 76 (2d Cir. 2000); Kelly v. Classic Rests. Corp., No. 01 CV 09345 (GBD), 2003 WL 22052845, at *4 (S.D.N.Y. Sept. 2, 2003). Arbitration clauses that cover "any dispute concerning the interpretation, application, or claimed violation of a specific term or provision" of the collective bargaining agreement do not contain the requisite "clear and unmistakable" waiver because "the degree of generality [in the arbitration provision] falls far short of a specific agreement to submit all federal claims to arbitration." Rogers, 220 F.3d at 76. For a case where arbitration was required, see 14 Penn Plaza LLC v. Pyett, 129 S. Ct. 1456, 1458-59 (2009) (mandating arbitration of discrimination claim

where collective bargaining agreement included anti-discrimination clause).

Courts have held that plaintiffs covered by a collective bargaining agreement that required arbitration of any disputes concerning the interpretation or application of the agreement are entitled to pursue their individual statutory rights under the FLSA in federal court. See Tran v. Tran, 54 F.3d 115, 117-18 (2d Cir. 1995); see also Mascol v. E & L Transp., Inc., 387 F. Supp. 2d 87, 104-05 (E.D.N.Y. 2005) (permitting plaintiff to proceed in federal court because the arbitration clause did not expressly cover individual statutory claims for unpaid overtime under the FLSA or NYLL).

The CBA at issue here states that "[a]ll disputes concerning the application, interpretation or construction of this Agreement, or any of its terms, conditions or provisions" must proceed through the grievance procedures and, if the dispute is unable to be resolved, it "may be submitted to arbitration." The provisions in the CBA do not expressly specify that all disputes, including those arising under federal law, are subject to arbitration. Moreover, the CBA does not name or incorporate the FLSA into the arbitration clause. As such, the provisions of the CBA are too broad and general to demonstrate the requisite "clear and unmistakable" intent to submit all federal statutory claims to arbitration.

Defendants argue that the parties' past practice of arbitrating similar wage and hour disputes requires arbitration of the present

15

overtime claim. The court does not agree, and finds no basis for the "requirement" urged by defendants.

Defendants contend that issues regarding overtime pay, including the treatment of special function service fees, are all properly resolved by interpretation and application of the CBA, and that this circumstance strongly favors arbitration under the CBA. The problem with this argument is that the issue is apparently covered directly by the FLSA but not by the CBA. The CBA enumerates the regular pay rates for all employees by job responsibility. It also contains a provision, described earlier, guaranteeing banquet service staff a gratuity of 18% of the total bill for private events. But the CBA is silent as to whether the compulsory 18% gratuity earned by banquet employees is factored into their base pay rate for calculation of overtime. This question cannot be answered by referring to the CBA. The FLSA and the regulations thereunder, however, appear to cover the question.

The FLSA requires employers to pay their employees at a rate of one-and-one-half times the employees' regular hourly rates for all hours worked in excess of 40 hours a week. See 29 U.S.C. § 207(a)(1). For purposes of satisfying the FLSA, federal labor regulations distinguish between mandatory service fees and gratuities. Indeed, a "compulsory charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to his employees, cannot be counted as a tip

received in applying the provisions of [29 U.S.C. §§ 203(m) and (t) to determine wages]." 29 C.F.R. § 531.55(a). Since federal law counts service charges as wages, they must be included in the employee's total remuneration for purposes of determining his pay rate for overtime purposes. See 29 C.F.R. § 531.60(a).

Defendants are probably right that, in an arbitration, the arbitrator could probably resolve the issue at hand. But there would necessarily be reference to the FLSA and its regulations.

Under all the circumstances, it would appear highly appropriate and efficient to allow plaintiffs to pursue their overtime claim directly in court under the FLSA, and the authorities give them the right to do so.

## CONCLUSION

Defendants' motion to dismiss, treated as one for summary judgment, is denied.

Dated: New York, New York
       August 20, 2010

SO ORDERED

Thomas P. Griesa
U.S.D.J.